## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| WILLIE WINTERS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:21-cv-157 (WLS) |
| | : | |
| NURSE NIESON, *et al.,* | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's State Law Tort Claims. (Doc. 8.) Therein, Defendants request that this Court dismiss the state law medical malpractice claims asserted against them in this action for two reasons. First, (I) Defendants contend that Plaintiff's medical malpractice claims are barred by the *Eleventh Amendment*, the Georgia Constitution, and the Georgia Tort Claims Act, *O.C.G.A. 77 50-21-20 et seq* ("GTCA"). Second, (II) Defendants contend that even if Plaintiff had brought his medical malpractice claims in state court, that claim would be barred as Plaintiff did not comply with the procedural requirements of the GTCA. (Doc. 8-1 at 4.) As the GTCA precludes this Court from exercising subject matter jurisdiction over Plaintiff's state law tort claims, Defendant's Motion to Dismiss Plaintiff's State Law Tort Claims (Doc. 8) is **GRANTED**.

## RELEVANT PROCEDURAL HISTORY

On December 15, 2021 Plaintiff, Willie Winters, filed a Complaint with this Court alleging two causes of action against Defendants Delisha Bryant, Pamela Nieson and Tina Starling: (1) deliberate indifference to a serious medical need in violation of the Eighth Amendment of the United States Constitution and (2) medical malpractice. (Doc. 1.) On January 18, 2022 Defendants filed a Consent Motion for Extension of Time to Serve and File an Answer or Motion to Dismiss. (Doc. 6.) This Court entered an Order (Doc. 7) granting Defendants' Consent Motion (Doc. 6) on January 20, 2022.

On February 23, 2022 Defendants filed the presently pending Motion to Dismiss Plaintiff's state law tort claims. (Doc. 8.) On March 11, 2022 Plaintiff filed a Consent Motion to Extend Time to Respond to Defendant's Motion to Dismiss. (Doc. 9.) This Court entered an Order (Doc. 10) granting Plaintiff's Consent Motion (Doc. 9) on March 14, 2022.  Plaintiff subsequently timely filed a Response on March 25, 2022. (Doc. 11.) Defendants filed a Reply in Support of their Motion to Dismiss (Doc. 14) on April 6, 2022. Accordingly, briefing has concluded, and this issue is ripe for disposition.

## **FACTUAL SUMMARY**

The following facts are derived from Plaintiff's Complaint (Doc. 1), Defendants' Motion to Dismiss (Doc. 8), Plaintiff's Response (Doc. 11) and Defendants' Reply. (Doc. 14.) In reviewing Defendant's Motion to Dismiss (Doc. 8) the Court accepts the facts pleaded in the complaint as true and construes them in the light most favorable to the Plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).

This action alleges deliberate indifference to Plaintiff's serious medical need in violation of the *Eighth Amendment* as well as a state law claim of medical malpractice that allegedly resulted in Plaintiff's left lung undergoing necrosis inside his body. Plaintiff at all times relevant to these proceedings was an inmate at the Valdosta State Prison in Valdosta, Georgia. (Doc. 1 ¶ 1.)

On December 24, 2019, Plaintiff requested to go to medical, after returning from a routine doctor's appointment. (Doc. 1 ¶ 9.) Plaintiff requested to go to medical because on the ride to and from that routine doctor's appointment – which occurred at the hospital – Plaintiff had been coughing up an unknown brown substance. (Doc. 1 ¶ 9.) Plaintiff's request to go to medical was granted by Sergeant Speed and Sergeant Hadley who instructed Plaintiff see the nurse. (Doc. 1 ¶ 9.)

On his way to medical, Plaintiff was stopped by Defendant Unit Manager Bryant. (Docs. 1 ¶ 10 & 8-1 at 2.) Defendant Bryant allegedly proceeded to berate Plaintiff and accuse Plaintiff of going to medical without permission. (*Id.*) Defendant Bryant allegedly stated that she would not let Plaintiff "see any damn body" regarding his medical condition. (Doc. 1 ¶

10.) Before sending Plaintiff back to his dorm, Defendant Bryant ordered a full search of Plaintiff. (Doc. 1 ¶ 10.)

At this time Plaintiff had been sick – throwing up and coughing – for over two (2) weeks. (Docs. 1 ¶ 11 & 8-1 at 2.) Due to this illness Plaintiff was too weak to stand on his own, had repeatedly defecated in his clothes and had been throwing up large pieces of an unknown brown substance. (Doc. 1 ¶ 11.) It was later determined that the unknown brown substance were pieces of Plaintiff's left lung which had undergone necrosis inside Plaintiff's body. (Docs. 1 ¶¶ 11, 24 & 8-1 at 3.)

While the exact timing is unclear, from the record before the Court at this time, it would appear that the next day – December 25, 2019 – the inmates in Plaintiff's dorm room reported Plaintiff's illness to the dorm officers. (Docs. 1 ¶ 12 & 8-1 at 2.) Upon checking in on Plaintiff, the dorm officer immediately called for emergency medical. (Doc. 1 ¶ 12.) Plaintiff was carried to medical for treatment. (Doc. 1 ¶ 12.) Defendant Nurse Nieson treated Plaintiff by checking Plaintiff's lungs, reported that Plaintiff was breathing fine and informed Plaintiff that she would not treat him further. (Doc. 1 ¶ 13.) While Plaintiff requested a second opinion from the doctor, Plaintiff was sent back to his dorm and prevented from seeking further medical treatment. (Docs. 1 ¶ 13 & 8-1 at 2.)

On December 26, 2019, the inmates in Plaintiff's dorm room again approached the dorm officer – an Officer Thrasher –to report Plaintiff's worsening condition. (Docs. 1 ¶ 14 & 8-1 at 2.) Emergency medical was called again, and Plaintiff was taken back to medical for treatment. (Docs. 1 ¶ 14 & 9-1 at 2.) Defendant Nurse Starling treated Plaintiff by checking Plaintiff's lungs, reported that Plaintiff was breathing fine and had Plaintiff returned to his dorm. (Docs. 1 ¶ 14 & 9-1 at 2.)

The next day, December 27, 2019, Plaintiff's dorm officer called emergency medical and reported Plaintiff's worsening condition. (Docs. 1 ¶ 15 & 8-1 at 2.) A Doctor Moody inspected Plaintiff, and after listening to Plaintiff's left lung immediately called for Plaintiff to be taken to the nearest emergency hospital, South Georgia Medical Hospital. (Docs. 1 ¶ 15 & 8-1 at 2.) Plaintiff was placed on three different IVs at South Georgia Medical Hospital and administered multiple shots and medicine. (Docs. 1 ¶ 16 & 8-1 at 2.) Plaintiff was subsequently

diagnosed with double pneumonia, prescribed medication, and returned to Valdosta State Prison on December 28, 2019. (Docs. 1 ¶ 16 & 8-1 at 2-3.)

After being returned to Valdosta State Prison, Plaintiff was allegedly not administered his prescribed medication or treatment. (Docs. 1 ¶ 17 & 8-1 at 3.) Instead, Plaintiff was allegedly provided with just one antibiotic pill a day. (Docs. 1 ¶ 17 & 8-1 at 3.) As a result, Plaintiff's condition worsened, and Plaintiff continued to cough up pieces of his lung. (Docs. 1 ¶ 18 & 8-1 at 3.) Despite Plaintiff's double pneumonia, Defendant Bryant continuously harassed and berated Plaintiff, ordering Plaintiff to tidy his room and clean up the pieces of blood and rotted lung that Plaintiff had coughed into a cup next to his bed. (Docs. 1 ¶ 19 & 8-1 at 3.)

From December 28, 2019 through January 9, 2020 Defendants Nurse Nieson and Nurse Starling as well as non-defendants Nurse Stevens and PA Woodburn checked in on Plaintiff every few days. (Docs. 1 ¶ 20 & 8-1 at 3.) According to Plaintiff, Defendant Nieson allegedly claimed Plaintiff was breathing fine, allegedly prevented Plaintiff from seeking medical assistance and allegedly harassed Plaintiff by telling him that he was nasty and that she would not let "[Plaintiff's] ass get near [her] until you stop all that nasty ass shit." (Docs. 1 ¶¶ 20, 21 & 8-1 at 3.) According to Plaintiff, "[o]ther nurses refused to enter the room to treat Plaintiff because he was 'nasty.'" (Doc. 1 ¶ 21.)

On January 9, 2020 Plaintiff passed Dr. Moody's door and pleaded to see him. (Docs. 1 ¶ 22 & 8-1 at 3.) Dr. Moody invited Plaintiff into his office, and after performing a short examination and witnessing Plaintiff cough up a piece of his lung, immediately called for the nurses to alert the hospital that Plaintiff was coming right away." (Docs. 1 ¶ 22 & 8-1 at 3.) Before transferring Plaintiff to South Georgia Medical Hospital Dr. Moody hooked Plaintiff up to an oxygen line and administered him several shots. (Docs. 1 ¶ 22 & 8-1 at 3.)

At South Georgia Medical Hospital, Plaintiff was once again placed on multiple different IVs and administered shots. (Docs. 1 ¶ 23 & 8-1 at 3.) According to Plaintiff, the doctor who treated Plaintiff allegedly stated "what I want to know is what the hell has happened to you since I saw you here a week and a half ago. Because now you are 10 times worse than you was then." (Doc. 1 ¶ 23.) Plaintiff also had blood work taken and pieces of his lung were sent to a lab for testing. (Docs. 1 ¶ 22 & 8-1 at 3.)

Those tests revealed that Plaintiff's double pneumonia had turned into necrotizing pneumonia and that the brown pieces Plaintiff had been coughing up were in fact pieces of Plaintiff's rotted left lung. (Docs. 1 ¶ 24 & 8-1 at 3.) Plaintiff was subsequently placed in the heart trauma unit at South Georgia Medical Hospital for over two weeks. (Docs. 1 ¶ 25 & 8-1 at 3-4.) During that period, the hospital's lung specialist informed Plaintiff that there was nothing that the hospital could do to save his lung. (Docs. 1 ¶ 25 & 8-1 at 4.) Plaintiff was also informed that he needed to see a blood specialist due to an undiagnosed issue with his blood. (Docs. 1 ¶ 25 & 8-1 at 4.)

Upon returning to Valdosta State Prison, Plaintiff was informed by Officer Dough Rightall that it was possible that items from Plaintiff's personal property had been disposed of because the nurses allegedly assumed Plaintiff would die and not return to the prison. Docs. 1 ¶ 26 & 8-1 at 4.)

Plaintiff subsequently filed the present lawsuit suit seeking compensatory damages against all defendants in their individual capacities on the state law claims and against Defendants Nurse Starling and Nurse Niesen on the federal claim.

## DISCUSSION

In Defendants' Motion to Dismiss Plaintiff's State Law Tort Claims (Doc. 8) Defendants request that this Court dismiss Plaintiff's state law medical malpractice tort claims for two separate and independent reasons. (Doc. 8-1 at 4.) First, (I) Defendants contend that Plaintiff's state law tort claims are barred by the *Eleventh Amendment*, the Georgia Constitution, and the GTCA, *O.C.G.A. §§ 50-21-20 et seq.* (Doc. 8-1 at 4.) Second, (II) Defendants contend that even if Plaintiff's state law medical malpractice tort claims were not barred by the *Eleventh Amendment*, the Georgia Constitution and the GTCA, Plaintiff's claims would still be barred because Plaintiff did not comply with the procedural requirements of the GTCA and the GTCA does not allow for punitive damages (Doc. 8-1 at 6.) Plaintiff, in his Response contends that state law causes of action are not barred by the *Eleventh Amendment* when they're filed against the defendants in their individual capacities and that the procedural requirements of the Georgia Tort Claims Act are not applicable in federal court.[1] (Doc. 11 at 2-3.)

---

[1] While Plaintiff is technically correct that *Eleventh Amendment* immunity is inapplicable when state officers are sued in their individual capacities under 42 U.S.C. § 1983, this Court does not agree with Plaintiff's contention

As this Court finds the GTCA precludes this Court from exercising jurisdiction over Plaintiff's state law causes of action it declines to reach the issue of whether the procedural requirements of the GTCA are applicable in federal court.

I. **The GTCA Precludes Plaintiff's State Law Medical Malpractice Claims From Proceeding In this Court**

The Eleventh Amendment of the United States Constitution protects a state from being sued in federal court without the state's consent, including suits against the state by its own citizens. *Abusaid v. Hillsborough County Bd. Of County Comm'rs*, 405 F.3d 1298, 1303 (11th Cir. 2005); *Manders v. Lee*, 338 F.3d 1304, 1308 n.8 (11th Cir. 2003) (en banc). In order for a state to waive its immunity, it must do so expressly. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Gamble v. Florida Dep't of Health and Rehab. Serv.*, 779 F.2d 1509, 1512 (11th Cir. 1986). Waiver is shown only by an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the *Eleventh Amendment*." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985).

In 1992, the State of Georgia expressly waived its sovereign immunity in certain cases with the passage of the GTCA. *See Datz v. Brinson*, 430 S.E.2d 823 (1993). *See also Article I, Section II, Paragraph IX of the Georgia Constitution*. In passing the GTCA, the General Assembly declared that as a matter of public policy "the state shall only be liable in tort actions within the limitations of this article and in accordance with the fair and uniform principles established in this article. *O.C.G.A. § 50-21-21(a)*. The GTCA therefore provides for a limited waiver of the State of Georgia's "sovereign immunity for actions alleging torts committed by state officers or employees." *Powell v. Ga. Dep't of Corr.*, 2019 U.S. Dist. LEXIS 176592 at & 24 (M.D. Ga. Oct. 10, 2019). It does not, however, "waive the state's sovereign immunity for tort actions brought against the state in federal court." *Id. See also O.C.G.A. § 50-21-23(b)*. Pursuant

---

that this rule is also applicable to state law claims filed against state officers in their individual capacities. (Doc. 11 at 2.) *See Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 376 (1990) (officials who have sovereign immunity when sued in their official capacities are not entitled to sovereign immunity when they are sued in their individual capacities under § 1983). The Court does not agree because under the GTCA, state employees are immune from individual liability for torts committed while acting within the scope of their official duties or employment; instead the State must be substituted as the defendant. O.C.G.A. § 50-21-25(b). When the State is substituted as the defendant, the GTCA only creates a narrow waiver of sovereign immunity through which the plaintiff can sue the State for torts committed by state actors. Suits in federal court, however, are not part of that waiver.

to the GTCA "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefore." *O.C.G.A. § 50-21-25(a)*. This immunity applies even in situations where the officer is accused of committing an unauthorized tort that is intentional or malicious. *See Ridley v. Johns*, 552 S.E.2d 853, 854 (Ga. 2001).

In the present case, it is undisputed that the Defendants were acting within their official capacity as employees of Valdosta State Prison, when they allegedly committed the tort of medical malpractice. (Docs. 1 ¶ 31; 14 at 2.) Accordingly, this Court is precluded from exercising subject matter jurisdiction over or reaching the merits of Plaintiff's state law medical malpractice claims since *Eleventh Amendment* immunity is applicable and has not waived been waived for the purpose of proceeding in a United States Court by the express language of the GTCA. *O.C.G.A. § 50-21-23(b)* ("The State does not waive any immunity with respect to actions brought in the courts of the United States."). The court is precluded from exercising subject matter jurisdiction because medical malpractice is a state law tort claim, and state law claims are governed by state law. *Kell v. Smith*, 743 F. App'x 292, 294 (11th Cir. 2018) ("In civil actions in federal court, state law applies to any issue not governed by federal law.").

Accordingly, Defendants' Motion to Dismiss Plaintiff's State Law Tort Claims (Doc. 8) is **GRANTED**. In dismissing Plaintiff's medical malpractice claim, the Court notes that it has not reached a decision on the merits of Plaintiff's claims but only that they may not be entertained in this Court. Therefore, Plaintiff's medical malpractice claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's § 1983 claim of deliberate indifference to a serious medical need remains. The Court shall issue a Rule 16/26 order by separate order.

**SO ORDERED**, this <u>26th</u> day of April 2022.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**